**J. Dahl MURPHY, et al.**

v.

**Togo D. WEST, Jr., et al.**

**Civil Action No. AMD 95–3777.**

United States District Court, D. Maryland.

Nov. 13, 1996.

---

John Wadie Hermina, George Wadie Hermina, Hermina & Hermina, Laurel, MD, for plaintiffs.

Charles J. Peters, Assistant U.S. Attorney, Lynne A. Battaglia, United States Attorney, Baltimore, MD, for defendants.

Joel P. Bennett, Joel P. Bennett, P.C., Washington, DC, for defendant Goldman.

## MEMORANDUM

DAVIS, District Judge.

(i)

The plaintiffs are 24 current and former civilian employees of the United States Army Research Laboratory ("ARL"). Alleging the existence of a longstanding and pervasive regime of officially-sanctioned race and sex discrimination at ARL, plaintiffs purport to seek monetary, equitable and declaratory relief against the Secretary of the Army, defendant West ("the Secretary"), under Title VII, 42 U.S.C.A. § 2000e–16, on behalf of a class of current and former employees of ARL who have been victims of unlawful discrimination and retaliation. These claims are asserted in counts I, II and III of the amended complaint. In addition, plaintiffs purport to assert two state-law claims against 24 named military officers and civilian employees of ARL. Specifically, in count IV, plaintiffs seek to allege a state-law claim for "negligent hiring and retention" against Dr. John W. Lyons, the Director of ARL, and in count V, plaintiffs seek to allege a state-law claim for intentional infliction of emotional distress against Dr. Lyons and 23 supervisory officials at ARL.[1] Thus, federal question jurisdiction exists as to the Title VII claims and, although plaintiffs have not expressly invoked the supplemental jurisdiction provisions of 28 U.S.C.A. § 1367, pendent party jurisdiction arguably exists over the state-law claims.

(ii)

Several preliminary motions are pending before the Court. First, the Secretary has moved under Fed.R.Civ.Pro. 12(b)(6) to dismiss the Title VII claims for failure to exhaust administrative remedies. Also, acting pursuant to the Westfall amendments to the Federal Tort Claims Act, 28 U.S.C.A. § 2679(d) ("FTCA"), see Jamison v. Wiley, 14 F.3d 222, 226–27 (4th Cir.1994), the United States Attorney (as the Attorney General's designee) has certified that Dr. Lyons and 22 of the other 23 individual defendants

1. Plaintiffs have abandoned a state-law claim against the Secretary.

were performing duties within the scope of their government employment at the time of the incidents which form the basis for plaintiffs' allegations.[2] Hence, the United States has moved to be substituted as a party defendant on behalf of those individual defendants. Further, the United States has moved under Fed.R.Civ.Pro. 12(b)(1) to dismiss the state-law claims for failure of plaintiffs to exhaust the administrative claim requirements of the FTCA. Plaintiffs have opposed in whole or in part all of these motions. The parties presented oral argument at a hearing and, thereafter, plaintiffs sought leave to file a supplemental memorandum.

For the reasons set forth below, the motion of the Secretary to dismiss the Title VII claims shall be granted. The only federal claims originally asserted being thus eliminated from the case, I shall decline to consider the remaining motions, for lack of any necessity to do so at this time, but shall, instead, dismiss the state-law claims, *sua sponte*, for lack of jurisdiction.

### (iii)

Plaintiffs do not contend that any one of them has satisfied the relevant Title VII administrative remedy procedures applicable to federal employees, nor do they controvert the Secretary's assertion that the exercise of judicial jurisdiction over class complaints, as with individual complaints, is dependent upon the exhaustion of administrative remedies. *Brown v. General Services Admin.*, 425 U.S.

820, 829–32, 96 S.Ct. 1961, 1966–68, 48 L.Ed.2d 402 (1976); *Gulley v. Orr*, 905 F.2d 1383, 1384–85 (10th Cir.1990) (class complaint not administratively exhausted; class claims properly dismissed by district court); *see* 29 C.F.R. §§ 1614.103(a), 1614.204 (1996). Rather, citing a host of patently inapposite cases[3], plaintiffs contend that the statutory requirement of exhaustion of administrative remedies, which is an express condition precedent to a federal district court's exercise of jurisdiction over discrimination claims brought by federal employees against federal agencies under Title VII, is subject to a "futility" exception. The factual basis for plaintiffs' contention that the futility doctrine should apply is that the corruption at ARL is so deep and widespread—encompassing the equal opportunity staff as well as the operating units, according to plaintiffs—that the unsuccessful outcome of any class complaint they might file is a preordained certainty.

■ Plaintiffs have cited no case authority for their extraordinary proposition, and my own research has not located any substantial support for the creation of a "futility" exception to the Title VII exhaustion requirement, and certainly no support for the assertion that the administrative process may be disregarded in its entirety. I am constrained to the view that such an innovation is foreclosed by more than two decades of well-settled federal anti-discrimination jurisprudence and must be rejected out of hand.[4] Thus, since

2. The remaining individual defendant is separately represented by private counsel, and has moved to dismiss for lack of jurisdiction and for failure to state a claim. Plaintiffs have also purported to join countless "defendants yet unknown" from several administrative units at ARL.

3. *See Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (claims under the Education of the Handicapped Act); *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (constitutional tort claims); *McDonald v. Centra, Inc.*, 946 F.2d 1059 (4th Cir.1991) (ERISA claims); *Garmon v. Warner*, 358 F.Supp. 206 (W.D.N.C.1973) (Administrative Procedure Act).

4. To be sure, there are statements and intimations, but no *holdings*, that the futility doctrine might apply in the federal employment context to excuse a plaintiff's failure to satisfy the administrative exhaustion requirement under Title VII.

*See* 3 Larson, *Employment Discrimination*, § 64–02, at 64–4 to 64–8 (2d ed. 1996) ("Failure to pursue the administrative remedies . . . operates as a bar to judicial relief. . . . Note [however,] that the traditional exception to the exhaustion requirement, when pursuit of administrative remedies would be clearly futile, may well apply.") (footnote omitted).

In *Brundin v. United States*, 1996 WL 22370, at *7 (S.D.N.Y.1996), the Magistrate Judge evaluated a discrimination claim under the parallel protections of Title VII and the Civil Service Reform Act, 5 U.S.C.A. § 704 *et seq.* In discussing (and rejecting) the plaintiff's assertion that failure to exhaust her Reform Act claims should be excused on the ground of futility, the judge observed: "Although some courts have waived exhaustion of administrative remedies on the ground of futility, the concept is narrowly construed." None of the cases cited in *Brundin* as examples of the futility doctrine under civil service procedures support the plaintiffs' argument

plaintiffs have not satisfied the statutory prerequisites to a federal court lawsuit, their Title VII claims shall be dismissed.[5]

(iv)

With respect to the state-law claims, the parties have joined issue over the propriety of the United States Attorney's scope of employment certification and the related motion to substitute. Plaintiffs have argued vigorously that the evidence in this case will show, *inter alia,* that sexual assault and battery (and intentional, wrongful acts taken to retaliate against those who opposed such practices) lie at the core of their state-law claims. Thus, they contend, if they are allowed discovery on the issue of scope of employment they are certain to put the lie to the United States Attorney's certification. *See Jamison,* 14 F.3d at 228–29 (allegations of sexual harassment by supervisor in federal employment, admitted in part by individual defendant; withdrawal of certification by Attorney General); *Wood v. United States,* 995 F.2d 1122, 1130 (1st Cir.1993) ("We do not see how [the government] could characterize [incidents of sexual harassment] in a way that would bring them within [the individual] defendant's 'line of duty'.") (Breyer, J.); *id.* at 1138 ("Certainly Congress would be shocked if [sexual] harassment were held to be covered by official immunity, but no one is suggesting that it is.") (Coffin, S.C.J., dissenting). *See also Doe v. United States,* 618 F.Supp. 503, 505–06 (D.S.C.1984) (sexual harassment not within the line of duty), *aff'd,* 769 F.2d 174 (4th Cir.1985); *Turner v. United States,* 595 F.Supp. 708, 710 (W.D.La. 1984) (same). For its part, the government

recognizes, as it must, that the United States Attorney's certification is not conclusive and that, in a proper case, a plaintiff is entitled to discovery and an evidentiary hearing on that issue. *Gutierrez de Martinez v. Lamagno,* —— U.S. ——, ——, 115 S.Ct. 2227, 2236, 132 L.Ed.2d 375 (1995); *see Wilson v. Jones,* 902 F.Supp. 673 (E.D.Va.1995).

█ The more nettlesome cases arising under the Westfall amendments have come into federal court via removal, consistent with the predecessor Driver's Act procedures for removal of cases against federal employee motorists. *See Lamagno,* —— U.S. at —— —— ——, 115 S.Ct. at 2241–42 & n. 4 (Souter, J., dissenting); *see also Wilson, supra; Jamison, supra; and see Haddon v. United States,* 68 F.3d 1420 (D.C.Cir.1995). Significantly, although the Fourth Circuit has indicated that a district court does not have discretion in a case removed to federal court under the Westfall amendments to remand the case to state court, *Jamison,* 14 F.3d at 239 (general removal provision of 28 U.S.C.A. § 1447(c) controls remand question; *but see Haddon,* 68 F.3d at 1426–27 (district court may remand case if United States is not retained as a party after removal; general removal statute not relevant to remand question)), even if the United States Attorney rescinds an earlier certification, *Jamison, supra,* the Court has never suggested that a federal district court must retain jurisdiction over an original action founded on federal question jurisdiction where the federal claim is dismissed from the case in advance of the district court's adjudication of the scope of employment issue.[6]

here that a complete bypass of the Title VII administrative process may be overlooked by a federal district court. *See Hatcher v. Department of the Air Force,* 705 F.2d 1309 (11th Cir.1983); *Porter v. Schweiker,* 692 F.2d 740 (11th Cir.1982); *Gemmell v. Federal Aviation Admin.,* 558 F.Supp. 918 (D.D.C.1982). In contrast, there are many cases which have refused to allow a bypass of the Title VII administrative process. *See, e.g., Hoffman v. Boeing,* 596 F.2d 683, 684–85 (5th Cir. 1979) ("The timely filing of an administrative complaint is a condition precedent to bringing a discrimination suit under Title VII.... The ... regulations setting up a grievance procedure ... are not to be interpreted in an overly technical manner ..., but a plaintiff will not be allowed deliberately to bypass the opportunity for concili-

ation and administrative relief provided by them.... Unsuccessful resort to agency procedure is a *sine qua non* to trial de novo....") (citations omitted). *And see* B. Schlei & P. Grossman, *Employment Discrimination Law,* at 1209–11 (2d ed. 1983).

5. Plaintiffs have adivsed that during the pendency of this case in this Court, one of the plaintiffs has indeed filed a class complaint with the appropriate agency officials.

6. In *Lamagno,* —— U.S. at —— – ——, 115 S.Ct. at 2236–37, Justice Ginsburg suggested that the scope of employment issue might be the very "federal question" necessary to support jurisdiction in Westfall Act cases in the first instance.

In the case at bar, I find it unnecessary to delve into the "scope" issue inasmuch as exercise of the court's pendent party jurisdiction in this case under 28 U.S.C.A. § 1367 is discretionary. *See* 28 U.S.C.A. § 1367(c)(3).[7] Even if I were to conclude after an evidentiary hearing that the United States Attorney's certification as to one or more of the individual defendants is invalid, I would not find it appropriate to retain jurisdiction over those claims in this case. There has been no suggestion that diversity of citizenship jurisdiction might exist in this case as it is presently constituted, and indeed, plaintiffs appear to have little, if any, knowledge as to the home addresses of any of the individual defendants. Under the circumstances, I discern no persuasive reason to retain jurisdiction to adjudicate the scope of employment question framed by the parties. Dismissal of remaining state-law claims is the general rule under analogous circumstances, and dismissal of those claims here is consistent with, and in the spirit of, the general rule. *Shanaghan v. Cahill,* 58 F.3d 106, 110 (4th Cir.1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.").[8]

In reaching this determination, I am fully cognizant that there is reason to believe I have merely delayed the inevitable, as plaintiffs have urged. Furthermore, I have not overlooked the fact that a mini-trial on the scope of employment issue may well pretermit a significant part of the disputed issues on the merits, but this will be true whenever the "scope" issue is finally adjudicated. In any event, I am not prepared to give up all hope of conciliation, in despair of the prospect that meaningful administrative relief will be withheld, at least, perhaps, as to some of the putative plaintiff class, e.g., current employees, and especially now that highly capable counsel have been retained by leaders of the putative class to protect their interests. Moreover, there is reason to believe that if and when the case returns to this Court, the issues (and the allegations underlying them) will be more sharply focused and fleshed out.[9] Accordingly, prudence mili-

---

This discussion is not a part of the holding in that case, however, because (1) Justice O'Connor, who joined the other portions of Justice Ginsburg's opinion for the majority, declined to join in this reasoning, *see id.* at —— — ——, 115 S.Ct. at 2237–38 (O'Connor, J., concurring in part and concurring in the judgment), and (2) there was complete diversity of citizenship between the parties, in any event. *Id.* at ——, 115 S.Ct. at 2236. Of course, it was just this jurisdictional issue, clearly of constitutional dimension, which in large part compelled the dissenters to conclude that the Attorney General's certification decision should be held conclusive except when, as provided in the statute, upon her *refusal* to certify, the affected individual employee-defendant might obtain judicial review. *See id.* at —— — ——, 115 S.Ct. at 2239–40 (Souter, J., dissenting).

7. Section 1367(c)(3) provides: "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— ... (3) the district court has dismissed all claims over which it has original jurisdiction...."

8. I note that the Westfall Act can be read (and, perhaps, should be read) in a way that removes any discretion from a district court as to the manner in which the case is treated at the preliminary stages. That is, the language of the statute, "[u]pon certification ..., any civil action ... shall be deemed an action against the United

States," 28 U.S.C.A. § 2679(d)(1), could be read to obviate the need for a formal motion for substitution, inviting a judicial response. *See* Fed.R.Civ.Pro. 7(b) ("An application to the court for an order shall be by motion...."). Arguably, therefore, no motion for substitution is necessary or appropriate under the Westfall Act. In the instant case, however, several motions for substitution (together with proposed orders) were filed, and (particularly in view of plaintiffs' timely opposition thereto) I have elected to treat the substitution of the United States as a *judicial act* and not as a *fait accompli,* accomplished as a matter of law by operation of the statute, merely upon the filing of the certification by the United States Attorney in respect to a particular defendant. Also, because one individual defendant is privately represented (and, indeed, is challenging the Court's supplemental jurisdiction), I clearly have the discretion to adjudicate the issue of subject matter jurisdiction in advance of the certification issue. It may be, however, in light of the statutory language, that a *notice* of substitution, rather than a *motion* for substitution, is the proper procedural vehicle through which the substitution should be effected.

9. In light of the possibility that one or more of plaintiffs might refile claims similar to those asserted here, the following observations are appropriate. The amended complaint is woefully deficient under Fed.R.Civ.Pro. 12(b)(6) in respect to the allegations against the individual defendants. The Maryland cause of action for inten-

tates strongly in favor of dismissal of the case at his time.

<center>(v)</center>

For the reasons set forth above, and by separate order entered herewith, the Secretary's motion to dismiss shall be granted, and counts I, II and III of the amended complaint shall be dismissed. Under the circumstances of this case, the claims asserted in counts IV and V shall be dismissed for lack of subject matter jurisdiction.

</center>

tional infliction of emotional distress seems hardly to be made out by an allegation of "deliberate inaction" in failing to stop harassment by others, or by an allegation that a defendant breached an "affirmative duty ... to remedy deprivations of human rights." *See generally Bryant v. Better Business Bureau of Greater Md., Inc.,* 923 F.Supp. 720, 746–50 (D.Md.1996); *Brumback v. Callas Contractors, Inc.,* 913 F.Supp. 929, 943–46 (D.Md.1995). Nor is it sufficient to allege that "virtually all" of the plaintiffs have experienced emotional distress inasmuch as the claim is ostensibly asserted on behalf of *all* plaintiffs.

It is also useful to observe that to the extent that the state-law claims rest on a theory of "wrongful omissions," e.g., negligent supervision, such a "failure of performance" almost certainly occurs within the scope of employment of a federal (or non-federal) supervisory employee. It is difficult, at best, therefore, to imagine how a supervisory employee who has not himself or herself engaged in odious acts of sexual or racial harassment, has acted (or failed to act) other than within the scope of employment in failing adequately to discipline those subordinates who engage in such activities.