**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SIGNET MORTGAGE CORPORATION,
<u>Plaintiff-Appellee,</u>

v.

No. 96-2810

THE HUNTINGTON MORTGAGE
COMPANY,
<u>Defendant-Appellant.</u>

SIGNET MORTGAGE CORPORATION,
<u>Plaintiff-Appellee,</u>

v.

No. 97-1011

THE HUNTINGTON MORTGAGE
COMPANY,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-96-418-3)

Argued: October 2, 1997

Decided: October 24, 1997

Before LUTTIG and MOTZ, Circuit Judges, and MICHAEL,
Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Alan Durrum Wingfield, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellant. Earle Duncan Getchell, Jr., MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellee. **ON BRIEF:** Stephen A. Northrup, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellant. J. William Boland, H. Carter Redd, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Huntington Mortgage Corporation appeals from the district court's order granting summary judgment in favor of Signet Mortgage Corporation. We affirm.

Huntington and Signet entered into a loan purchasing agreement (Agreement) in which Huntington agreed to sell to Signet the servicing rights to 13,781 mortgage loans. One of these mortgage loans was originally created between U.S. Funding, Inc. of America and homeowner Donald Tucker. U.S. Funding loaned Tucker $105,000 secured by a mortgage creating a first lien on Tucker's home. Huntington thereafter acquired from U.S. Funding the servicing rights to the Tucker loan and then sold those rights to Signet pursuant to the Agreement.

In anticipation of a foreclosure action by Signet, Tucker notified Signet by letter that he was rescinding the mortgage and security interest in his house. Tucker based his right to rescind the mortgage on certain alleged defects in the original loan with U.S. Funding, which he asserted violated the Truth in Lending Act. Upon receipt of

2

Tucker's rescission letter, Signet demanded that Huntington assume the defense of Tucker's claim pursuant to the Agreement. Huntington refused.

Signet then filed this action for a declaratory judgment, requesting that the court find Huntington obligated to assume the costs of Signet's defense of Tucker's claims under the Agreement. On cross-motions for summary judgment, the district court ruled in favor of Signet.

We review a district court's grant of summary judgment de novo. Jakubiak v. Perry, 101 F.3d 23, 26 (4th Cir. 1996).

In ¶ 8.1 of the Agreement, Huntington promised to indemnify and provide legal counsel to Signet to defend against any material breach of warranty. In ¶ 3.9(a) of the Agreement, Huntington warranted that:

> The Mortgage Loans are valid and enforceable in accordance with their terms and the laws of the jurisdiction in which the properties securing the Mortgage Loans are located.

In ¶ 3.9(h) of the Agreement, Huntington also warranted that:

> Seller and to the best of Seller's knowledge any other party originally named as payee under the promissory notes with respect to the Mortgage Loans have complied in all material respects with, and Seller will continue to so comply through the Transfer Date(s) with every applicable federal, state or local law, statute, and ordinance, and any rule, regulation, or order issued thereunder . . . including, without limitation, . . . truth-in-lending . . . and also including, without limitation, . . . Truth-in-Lending Law, in particular, Regulation Z as amended . . . .

Signet argues that Huntington breached the warranty provided in ¶ 3.9(a) of the Agreement because Tucker's rescission claims, if successful, would render the loan invalid and unenforceable. Huntington responds that because it neither caused nor knew about the alleged

3

Truth-in-Lending violations of the original payee, U.S. Funding, which form the basis of Tucker's rescission claim, Huntington did not breach the warranty set forth in ¶ 3.9(h). Furthermore, Huntington contends that because ¶ 3.9(a) and ¶ 3.9(h) directly conflict, and ¶ 3.9(h) is more specific than the general warranty provision in ¶ 3.9(a), only ¶ 3.9(h) applies to the Tucker loan. We disagree.

After careful reading of the Agreement as a whole, it is clear that the warranties provided in ¶¶ 3.9(a) and 3.9(h) afford Signet separate and distinct protections, and thus do not directly conflict. Paragraph 3.9(a) warrants that all loans are valid and enforceable, whereas ¶ 3.9(h) warrants that Huntington, itself, neither committed nor knew of any violations of the myriad laws mentioned in ¶ 3.9(h). It is clear that each warranty offers Signet different protections when considering that not all violations of laws covered in ¶ 3.9(h) would render the loan invalid or unenforceable under ¶ 3.9(a). Indeed, Signet clearly demonstrated, in its brief and at oral argument, that ¶ 3.9(a) and ¶ 3.9(h) could be reconciled in this manner, and Huntington does not successfully challenge this analysis. Thus, Signet could encounter situations where Huntington may have breached its warranty under ¶ 3.9(h) by knowingly committing a violation of law with respect to a particular loan that does not render that same loan invalid or unenforceable under ¶ 3.9(a).

Here, neither party disputes that the Tucker claim, if successful, would make the loan invalid and unenforceable, constituting a breach of the warranty set forth in ¶ 3.9(a) of the Agreement. The Tucker claim does not trigger ¶ 3.9(h); however, this is just one of the many other, distinct warranty provisions included in the Agreement that may not be triggered by the Tucker claim. Accordingly, the judgment of the district court is

AFFIRMED.

4